## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

_____

DELAINA BARNEY

        Appellant,

        v.

AKRON BOARD OF EDUCATION

        Appellee.

_____

)
)  Civil Action No. 5:16-CV-00112
)
)
)  JUDGE BENITA Y. PEARSON
)
)
)  **MOTION FOR RECONSIDERATION**
)  **REGARDING ORDER DATED**
)  **JULY 20, 2016**
)
)
)

Now comes the Appellant, Delaina Barney, by and through undersigned counsel, who hereby submits this Motion for Reconsideration Regarding Order Dated July 20, 2016. Pursuant to the Federal Rules of Civil Procedure, this Motion for Reconsideration is analyzed under Rule59(e), A Motion to Alter or Amend Judgment.

This Honorable Court issued an Order addressing multiple issues on July 20, 2016 (herein "Order").  This Order was based on facts that are not contained in the record and were potentially derived from unrecorded and unsworn statements by counsel during telephonic conferences.  Essentially, the facts in the Order were not derived from any evidence that was properly put before this Court.

The Appellant disputes many of the facts contained in the Order and is concerned that the unsworn and unrecorded statements are negatively impacting her ability to pursue her claims since the Order is prohibiting her from adding additional claims and negatively

1

affecting the nature of the proceedings.  As such, the Appellant seeks the opportunity to correct the record as it is necessary to correct a clear error of law or prevent a manifest injustice.  A Memorandum of Law is attached.

## MEMORANDUM OF LAW

**STANDARD OF REVIEW**

A Motion to Alter or Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure serves a limited purpose and should be granted for one of three reasons: (1) an intervening change in controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local Union No. 957 v. Dayton Newspapers, Inc*., 190 F.3d 434, 445 (6th Cir.1999), citing *Javetz v. Board of Control, Grand Valley State University*, 903 F.Supp. 1181, 1190 (W.D.Mich.1995).

Motions under Rule 59(e) may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment. *Vanguard Transportation Systems, Inc. v. Volvo Trucks North America, Inc*., slip copy, 2006 WL 3097189 (S.D. Ohio Oct. 30, 2006) (citations omitted).  Where a movant simply repeats arguments previously presented or presents arguments or law which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court. *Id.* at 547 n.9. (Citation omitted).

Here, the Appellant has not had the opportunity to address many unsworn and unrecorded[1] allegations made by the Respondent during conference calls that were used as the basis for the Order.  During the conference calls each party was afforded an opportunity to speak,  however, each party was not afforded the opportunity to rebut the opposing sides

---

[1] Undersigned counsel is unsure if the telephonic conference calls were recorded by this Honorable Court using a stenographer or other recording device.

position regarding every point.  Since these unsworn statements were made during unrecorded

conference calls and were not relevant to enlarging time to amend the Complaint, it was

believed by the Appellant that there would be an opportunity to rebut the Respondent's false

accusations with evidence when the time warranted.  As that opportunity was not afforded to

the Appellant, she submits this Motion for Reconsideration in effort to both preserve the

record and to correct a clear error of law or prevent manifest injustice.

**GROUNDS FOR RECONSIDERATION**

    **A.  Appellee never offered the minor child an "independent educational evaluation."**

        **1.  It is the school's burden to locate, identify, and properly evaluate every student with a disability that resides within its geographic boundaries.**

"Child find" is the affirmative, ongoing obligation of school districts to identify, locate,

and evaluate all children with disabilities residing within the jurisdiction that either have, or

are suspected of having, disabilities and need special education as a result of those disabilities

in compliance with 34 CFR 300.111 and OAC 3301-51-03.  In order to comply with Child

Find, each school district must put policies and procedures in place to ensure that:

> (a)  All children with disabilities residing in the state, including children with
> disabilities who are homeless children or are wards of the state, and children with
> disabilities attending private schools, regardless of the severity of their disability,
> and who need special education and related services, are identified, located, and
> evaluated; and (b)  A practical method is developed and implemented to determine
> which children are currently receiving needed special education and related
> services.

OAC 3301-51-03(B)(1)a-(b) and 34 CFR 300.111(a).  Child Find must include "[h]ighly

mobile children, including migrant children."  OAC 3301-51-03(B)(3).

Districts are responsible for conducting child find and identifying all IDEA-eligible

students that reside in their jurisdiction. Because the child find obligation is an affirmative one,

a parent is not required to request that a district identify and evaluate a child.  *Robertson*

*County Sch. Sys. v. King*, 24 IDELR 1036 (6th Cir. 1996, *unpublished*). *See also D.G. v. Flour*

*Bluff Indep. Sch. Dist.*, 59 IDELR 2 (5th Cir. 2012, *unpublished*); *C.C. Jr. v. Beaumont Indep. Sch. Dist.*, 65 IDELR 109 (E.D. Tex. 2015, *unpublished*); *District of Columbia Pub. Schs.*, 115 LRP 16767 (SEA DC 03/24/15); and *Toledo City Schs.*, 66 IDELR 174 (SEA OH 2015).

### 2.  Initial evaluations

Prior to explaining what an independent educational evaluation and re-evaluation are, it is important to first consider what an "evaluation" is under the Individuals with Disabilities Education Act ("IDEA").  The IDEA defines "evaluation" to mean the procedures used to determine whether a child has a disability and the nature and extent of the child's need for special education[2] and related services.[3]  Those procedures must comport with the

---

[2] "Special education" means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability.  OAC 3301-51-01(60)(a)(i).  Special education includes instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings and instruction in physical education.  OAC 3301-51-01(60)(a)(i)(a)-(b).  Special education can include speech-language pathology services, or any other related service, if the IEP team considers the service special education rather than a related service under state standards; and travel training; and vocational education.  OAC 3301-51-01(60)(a)(ii)(a)-(c).

"Specially designed instruction" means adapting, as appropriate to the needs of an eligible child under this rule, the content, methodology, or delivery of instruction: (a) To address the unique needs of the child that result from the child's disability; and (b) To ensure access of the child to the general curriculum, so that the child can meet the educational standards within the jurisdiction of the school district that apply to all children.  3301-51-01(60)(b)(iii)(a)-(b).

"Travel training" means providing instruction, as appropriate, to children with significant cognitive (intellectual) disabilities, and any other children with disabilities who require this instruction, to enable them to: (a) Develop an awareness of the environment in which they live; and (b) Learn the skills necessary to move effectively and safely from place to place within that environment (e.g., in school, in the home, at work, and in the community).  3301-51-01(60)(b)(iv)(a)-(b).

[3] "Related services" means transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education, and includes speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, early identification and assessment of disabilities in children, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services for diagnostic or evaluation purposes. Related services also include school health services and school nurse services, social work services in schools, and parent counseling and training.  OAC 3301-51-01(B)(54)

requirements set forth at 34 CFR 300.304 through 34 CFR 300.311.  34 CFR 300.15.  An

evaluation under the IDEA serves two purposes: identifying students who need specialized

instruction and related services because of an IDEA-eligible disability; and helping IEP teams

identify the special education and related services the student requires. 71 Fed. Reg. 46,548

(2006).

   The child must be assessed in all areas related to the suspected disability in the

evaluation, including, if appropriate, health, vision, hearing, social and emotional status,

general intelligence, academic performance, communicative status, and motor abilities.  OAC

3301-51-06(E)(3)(d).  In evaluating each child with a disability, the evaluation must be

sufficiently comprehensive to identify all of the child's special education and related services

needs, whether or not commonly linked to the disability category in which the child has been

classified. OAC 3301-51-06(E)(3)(f).  Medical consultation shall be encouraged for a

preschool or school-age child on a continuing basis, especially when school authorities feel

that there has been a change in the child's behavior or educational functioning or when new

symptoms are detected.  OAC 3301-51-06(E)(3)(h).  Additionally, there must be some

consideration as to whether any additions or modifications to the special education and related

services are needed to enable the child to meet the measurable annual goals set out in the IEP

of the child and to *participate*, as appropriate, in the general education curriculum.  3301-51-

06(F)(1)(b)(vi) *emphasis added*.

   A district may fulfill the evaluation requirement by having its own personnel evaluate

the student, or by arranging a third-party evaluation at no cost to the parents.  However, the

district cannot require the parents to obtain their own evaluation.  *See, e.g., N.B. and C.B. v.

Hellgate Elem. Sch. Dist.*, 50 IDELR 241 (9th Cir. 2008).  The failure to utilize a variety of

assessment tools in conducting an evaluation may rise to the level of a denial of FAPE.  *See

Timothy O. v. Paso Robles Unified Sch. Dist.*, 67 IDELR 227 (9th Cir. 2016).

However, an evaluation does not require schools to conduct assessments or tests on the student if there is existing data available.  OAC 3301-51-06(F)(1).  When it comes to a district's duty to review existing data as part of an evaluation, "existing" is not the same as "close at hand." Responding to a question posed by a special education advocate, OSEP in *Letter to Mintz*, 57 IDELR 290 (OSEP 2011), explained that an IEP team may not exclude a particular record from its review merely because the record is not conveniently located.

### 3.  Independent educational evaluations and re-evaluations

"Independent educational evaluation" means an evaluation conducted by a qualified examiner who is not employed by the school district responsible for the education of the child in question.  OAC 3301-51-05(G)(c)(i) and 34 CFR 502(3)(i).  Whereas a re-evaluation must be conducted using the same procedures as an initial evaluation[4] and may occur not more than once a year, unless the parent and the public agency agree otherwise; and must occur at least once every three (3) years, unless the parent and the public agency agree that a re-evaluation is unnecessary.  OAC 3301-51-06(D)(1) and 34 CFR 300.303(b)(1)-(2).

Excluding the timeline indicated immediately above, a re-evaluation only occurs when the public agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a re-evaluation; or the child's parent or teacher requests a reevaluation. 34 CFR 300.303(a)(1)-(2)

It was the Appellee's employee that was conducting the evaluation and it was not J.B.'s initial evaluation.  Therefore, since the school district was the one that was conducting the another evaluation of the minor child in this matter, it was not an independent educational evaluation, it was a re-evaluation under the IDEA and the Ohio Administrative Code.

### B.  Appellant and Appellant's Counsel in no way impeded the re-evaluation

---

[4] There are some additional requirements regarding initial evaluations that generally relate to the timing of the initial evaluation, such as a requirement that the initial evaluation be completed within sixty (60) days of parental consent.  OAC 3301-51-06(B) and 3301-51-06(B)(4)(a).

**process of the minor child because the Appellee already had signed and executed releases for records back in November 2015 when it first initiated the re-evaluation.**

### 1. Underlying facts

Appellant sought an independent educational evaluation ("IEE") for her child on November 10, 2015. *Exhibit 1, email request for IEE.* ████████████████

████████████████████████████████████████

████████████████████████████████ *Exhibit 2,* ████

████████████████ ████████████████████████

████████████████████████████ *Exhibit*

*3,* ████████████████████████ Further, Appellant executed

medical releases on November 9, 2015,[6] to allow the Appellee to receive medical records;

which the Appellee's school psychologist, Dr. Merkle, reported to be for the re-evaluation.[7]

*Exhibit 4, affidavit of Jason D. Wallace.* ████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████



---

[5] It is unclear who sought the re-evaluation since there was not a Prior Written Notice in J.B.'s educational files that would indicate this information.

[6] After a review of the records, it appears at no time prior to this date did the Appellee ever seek all of the minor child's medical records.

[7] This was observed by undersigned counsel when viewing records at the school, but undersigned counsel was not provided with a copy of this record to produce to the Court.

[8] This deprived the parents the opportunity to provide informed consent, as required by state and federal law. OAC 3301-51-05(C), OAC 3301-51-01(B)(12), 20 U.S.C. 1414(a)(1)(D); 34 CFR 300.9.

Exhibit 3

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *Exhibit 5.*██████████████████

The Appellee only had approximately twenty-four (24) pages from Akron Children's Hospital pursuant to its request for records presumably in November 2015.[11]  *Exhibit 4.*  As noted above, as of April 5, 2016, there were no records in the minor child's file showing the Appellee even sent the Appellant's medical release form to the minor child's psychologist and counselor that the Appellant executed on November 19, 2015 for the school to use.  *Id.*

Even though the Appellee did not seek additional information from the Appellant, the Appellant provided additional medical records to the school on or about March 1, 2016, indicating the minor child had yet another head injury, was seen at the hospital again, and would require more accommodations and assistance at school.[12]  *Id.*  The Appellee may claim this head injury is the reason why the re-evaluation has yet to be completed, but there is absolutely no reason why a re-evaluation could not have been completed before the head

---

[10] This was observed by undersigned counsel when viewing records at the school, but undersigned counsel was not provided with a copy of this record to produce to the Court.

[11] When Appellant sought records from the medical provider the provider provided more than two hundred (200) pages of medical records.  The Appellee's records consisted of records regarding encounters on 10/21/13, 11/19/13, 7/21/14, 8/26/14, 10/01/14, 12/3/14, and 4/2/15.  It is undersigned counsel's belief that the Appellee had more records in its possession that came from the Appellant, but when it sought records on its own for the first time in November it only made a limited request for records because there are many more records available than the ones the school has.  *Exhibit 4.*  However, in an email from Ms. Porter on May 11, 2016, she indicates all of the medical records the school had in its possession regarding J.B. came from the Appellant. *Exhibit 6 pg. 2, email exchange.*

[12] This was observed by undersigned counsel when viewing records at the school, but undersigned counsel was not provided with a copy of this record to produce to the Court.

injury or as of the day this Motion is submitted.[13]  Between November 2015 and March 30, 2016, the Appellant made several additional attempts to receive copies of the minor child's records with no success and it is unclear what, if anything, the Appellee did to attempt to complete the re-evaluation that it said it was initiating back in November 2015.[14]

On March 30, 2016 this Honorable Court Ordered Appellant's counsel to provide Appellee's counsel with medical releases forthwith, so the Appellee could complete an independent educational evaluation.[15]  On April 4, 2016 Appellee's counsel provided notice to undersigned counsel that he could have access to view the minor child's records and provided the medical releases referenced in this Court's Order on March 30, 2016  *Id.* ███████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████  *Exhibit 7,* ████████████████

The following day, April 5, 2016, undersigned counsel met with Dr. Merkle to review all of the minor child's records, not just the child study records.  *Exhibit 4 and Exhibit 8, email exchange.*  The meeting lasted for more than two (2) hours and only ended because the work day was ending for the school's staff, including Dr. Merkle, not because undersigned counsel was able to review all of the minor child's records.  *Exhibit 4.*  While at the meeting with Dr. Merkle, Dr. Merkle provided undersigned counsel with a packet of releases and questions for

---

[13] J.B. received multiple head injuries during and around the re-evaluation of 2014 conducted by the Appellee.  Oddly, the Appellee continued the re-evaluation then and did not feel a need to redo any assessments at that time or seek medical records.

[14] While the timelines for an initial evaluation do not apply for re-evaluations, an initial evaluation must be completed no later than sixty (60) days after the parent provides consent.  OAC 3301-51-06(B)(4)(a).  Here, the parent provided consent in November of 2015, so the re-evaluation should have been able to be completed by January 2016; especially considering the school had all of the releases executed by the parent in November.

[15] As indicated above, the Court used the term independent educational evaluation instead of re-evaluation.

the Appellant and indicated to undersigned counsel that he could have the Appellant drop the releases off at the minor child's school, instead of providing them directly to himself or Appellee's counsel.  *Id.*  Also, at this meeting Dr. Merkle declined undersigned counsel's offer to provide the school with all of the medical documents the Appellant had compiled about the minor child to date.  *Id.*

The Appellant did drop off the releases for medical records to the school as requested by Dr. Merkle, but it is unclear on what date.  It was alleged by Appellee's counsel that the releases were not returned until April 29, 2016.  However, the Appellant is not sure that is the correct date because undersigned counsel viewed an email dated April 28, 2016 in the minor child's file that was from Dr. Merkle indicating that the parent had dropped off ten executed releases previously.[16]  *Id.*  Also, that email from Dr. Merkle indicated that the providers needed filled in, not that the releases were unacceptable, and he sought direction from Appellee's counsel as to what facilities she desired records from.  *Id.*  It is important to note that the Appellant has provided the Appellee with information from numerous medical providers over the years and had just executed all of the medical releases the Appellee sought back in November 2015.  *Id. and Exhibit 9.*  Even as of May 9, 2016, undersigned counsel did not know that the Appellee did not have all of the information it wanted on the releases since the Appellant had always communicated with the school about the minor child's providers, the Appellee had possession of prior medical documents provided by the Appellant, and the Appellee never communicated that it desired more information until a conference call with this

---

[16] Undersigned counsel viewed this email when he visited the school a second time to attempt to finish going through the minor child's records on May 11, 2016.  Unfortunately, undersigned counsel was not presented with all of the child's records again that day and had to go back to the school yet again on May 17, 2016 to view additional records.  Even after three (3) separate visits to the school to view all of the child's records, undersigned counsel is still unsure if he has viewed all of records and the school is still refusing to provide copies of records that undersigned counsel has indicated he did not have or has not been able to view.  *Exhibit 4.*

Court on May 6, 2016. *Exhibit 10.* The signed releases with J.B.'s information completed and room to name the medical providers was given so the Appellee could issue the releases to any agency it desired, since it never sought J.B.'s records before according to Appellee's counsel. *Exhibit 6 pg.2.*

There is no known justification why the Appellee needed another release; especially considering that all of the minor child's doctors are affiliated with Akron Children's Hospital and that is one of the releases it had back in November 2015, apparently the first time the school ever sought a medical release to be signed by the Appellant. *Id.* The Appellee simply needed to submit one completed release to Akron Children's Hospital Records Department to receive all of the minor child's physicians' records, the same as undersigned counsel did. *Exhibit 4 and Exhibit 11, email communication.* It was shocking to hear the Appellee make the assertion to this Honorable Court that it did not have access to all of J.B.'s medical records considering Appellee's counsel never indicated they were seeking additional information on the releases prior to the May 6, 2016 conference call with this Honorable Court, and since the Appellee never sought all of the records back in November when the Appellant executed the releases at the Appellee's first request for them.[17]

Undersigned counsel did not simply fail to appear to view records at the Appellee's school on May 5, 2016, as asserted by Appellee's counsel. Undersigned counsel emailed Appellee's counsel on May 2, 2016, asking if he still needed to go to the school district to review records and indicating that Mrs. Barney would not be able to make it to view the

---

[17] Make no mistake, the Appellant acknowledges she did not follow this Honorable Court's Order on March 30, 2016, that directed the releases to be provided to Appellee's counsel. However, this was not in effort to circumvent this Court's Order, but rather because the Appellee's counsel and staff member indicated the method of delivery was an acceptable means for the Appellee to receive the executed releases. ████████████████████████████████████████████████████
*Exhibit 7.*

records on May 5, 2016 because of transportation issues.  *Exhibit 12, email communication and Exhibit 13, email communication*.  Undersigned counsel indicated back in December 2015 that the Appellant had transportation issues and would have difficulty making it to the school to view the records.  *Exhibit 14 and Exhibit 15*.

Undersigned counsel further indicated that he would like to get a copy of the records to share with Mrs. Barney and so he could have an expert review them.  *Exhibit 12*. Unfortunately, Appellee's Counsel did not respond to this email and did not follow up with undersigned counsel until May 5, 2016, when she inquired if undersigned counsel would be viewing records that day.  *Exhibit 16*.  Undersigned counsel answered her inquiry by indicating Appellee's counsel had failed to respond to his two previous emails and he would not be viewing that day since he no longer was aware that was a date to view records.  Appellee's counsel was asked yet again if she would provide copies of the records that were not previously provided, but she never answered this direct question.  *Id.*

Additionally, on May 11, 2016, the second time undersigned counsel went to Akron Public Schools to view the minor child's records, only the child study records were made available when it was clear undersigned counsel desired to view all of the minor child's records and the Appellee knew undersigned counsel wanted to continue where he left off with his review of the records.  *Exhibit 17 and Exhibit 18*. ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

*Exhibit 19*.  It is Appellee's counsel that is making the review of records extremely time consuming and very difficult. ████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

████████ *Exhibit 20 and Exhibit 21.*

## 2. Law

Even when parents fail or refuse to cooperate, the school district is not relieved of its obligation to provide FAPE to publicly enrolled IDEA-eligible students. As a result, the IDEA permits districts to conduct IEP meetings without parental participation when the school district is unable to convince the parents to attend. 34 CFR 300.322 (d); and *Board of Educ. of the Toledo City Sch. Dist. v. Horen*, 55 IDELR 102 (N.D. Ohio 2010), *aff'd*, 113 LRP 45713 (6th Cir. 05/26/11, *unpublished*). *See also J.N. v. District of Columbia*, 53 IDELR 326 (D.D.C. 2010). Mrs. Barney never refused or failed to cooperate when it came to her son's IEP meetings or evaluations. However, even if she did not cooperate, the school still must provide a FAPE.

The IEP team, not a student's physician, makes the determination as to whether the student is eligible for special education and related services under the IDEA. *Marshall Joint Sch. Dist. No. 2 v. C.D.*, 54 IDELR 307 (7th Cir. 2010). When a medical assessment is required, the district, not the parents, is responsible for arranging and paying for the assessment under the IDEA and Section 504. 71 Fed. Reg. 46,550 through 73 Fed. Reg. 46,551 (2006); and *Letter to Veir*, 20 IDELR 864 (OCR 1993). In order to meet these student needs, districts may seek an independent medical re-evaluation of the student to resolve conflicting and incomplete information about the student's condition or because a parent limits access to a student's medical provider. *Shelby S. v. Conroe Indep. Sch. Dist.*, 45 IDELR 269 (5th Cir. 2006), *cert. denied*, 109 LRP 47876, 549 U.S. 1111 (2007). *See also Oconee County Sch. Dist.*, 8 GASLD 72 (SEA GA 2014) (concluding that because a parent refused to provide access to her child's physician and the district failed to seek an independent medical evaluation, both the parent and the district impeded the collaborative IEP process). So even though the Appellant never restricted access to her child's providers, assuming arguendo that

she did restrict access, schools cannot sit on their hands and do nothing.

What has frustrated the completion of a re-evaluation with parental input is the fact the school has refused to meet numerous times when the parent attempts to attend IEP meetings with people who are familiar with her child and special education to address multiple concerns, and fails to keep the Appellant apprised of events surrounding her child.  On three (3) separate occasions within the past year, the IEP team has simply refused to meet and instead of addressing her concerns the IEP Team has simply stood up and left because the team did not like who the Appellant brought with her.[18]  *Exhibit 4, Exhibit 5 and Exhibit 22*.  This is in violation of federal law.  *Letter to Andel*, 67 IDELR 156, 116 LRP 8548 (OSEPS 2/17/16), and 34 CFR 300.321(a)(6).[19]



Therefore, based upon the fact that the school district already had medical releases

---

[18] Mrs. Barney attempted to bring a parent advocate and one of her attorneys with her to IEP meetings on December 17, 2015, April 14, 2016 and June 1, 2016.

from the Appellant back in November 2015 that it did not use or fully use, the fact that there

was no reason a re-evaluation could not be completed prior to March 2016 when it was

initiated back in November 2015, the fact that Appellee's counsel did not communicate that it

desired more information on the releases or that the Appellant needed to provide the releases

faster than she did, ████████████████████████████████████████████████████

██████████████████, the Appellant did not frustrate the re-evaluation process as she has

always complied with each and every request from the Appellee school district.  Despite

efforts to paint a picture that she was not cooperating to this Honorable Court, Mrs. Barney

continues to cooperate with the Appellee in hopes that the school will eventually decide to

properly help her son.[21]

> **C. Appellant's Counsel has not acted in bad faith or made the issues a moving target since this is the only time that the Appellant had the ability to raise additional claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.**

The Appellant indicated in her Motion for Extension of Time to File Amended

Complaint on February 12, 2016, that she would like to add Section 504 of the Rehabilitation

Act ("504"), Americans with Disabilities Act ("ADA") and state law claims.[22]  The Appellant

sought until March 14, 2016 to be able to file the Amended Complaint.  Similarly, the

Appellant indicated she would like to add the same claims in her pre-case management

conference report filed on February 22, 2016.  Now this Honorable Court has indicated the

Appellant seeks to add these claims to keep the Complaint a "moving target" or because she is

attempting to untimely present new theories of recovery since she does not have appropriate

factual, statutory, or case law support.  However, now is the only time that the Appellant could

---

[21] Which also begs the question, if the school district needed these medical documents in order to complete the re-evaluation, why did it not seek any medical documents during its previous evaluation and re-evaluations?  *Exhibit 6, Pg. 2.*
[22] The state law claims would be solely for torts committed during the time frame the administrative hearing was regarding and a state law discrimination claim for the same events.

file the 504 or ADA claims as those claims are only now properly before a court of competent jurisdiction.[23]

The IDEA implementing regulation at 34 CFR 300.516 (e) provides:

> "[n]othing in this part restricts or limits the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under section 615 of the Act, the procedures under 34 CFR 300.507 and 34 CFR 300.514 must be exhausted to the same extent as would be required had the action been brought under section 615 of the Act."

Additionally, 20 U.S. Code § 1415(l), Rule of construction, states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

The Sixth Circuit has recently discussed exhaustion in *Fry*.  The Court held "[u]nder that [IDEA], plaintiffs must exhaust IDEA procedures if they seek "relief that is also available" under IDEA, even if they do not include IDEA claims in their complaint. *Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 625 (6th Cir. 2015).  This language requires exhaustion when the injuries alleged can be remedied through IDEA procedures, or when the injuries relate to the specific substantive protections of the IDEA.  *Id. And see S.E. v. Grant Cnty. Bd. of Educ.,* 544 F.3d 633, 642 (6th Cir.2008).

The only way for the Appellant to pursue 504 and ADA claims is by exhausting her administrative remedies, i.e., the state administrative due process hearing and appeal.  *See*

_____

[23] Unless this Honorable Court simply meant that the Appellant could not add new claims to the current action, an administrative appeal, and that the Appellant would instead need to file a separate lawsuit alleging the 504, ADA and state law claims.

*Long v. Dawson Springs Indep. Sch. Dist.*, 46 IDELR 123 (6ᵗʰ Cir. 2006). It is not that the Appellant is delaying or moving the target, exhausting administrative remedies is the only way to get the target into court. There is no game, there is no bad faith, the Appellant is simply complying with existing law in order to be able to raise these claims. The Sixth Circuit Court of Appeals has held that a parent could not bring 504 and ADA claims because she failed to appeal a final order arising out of the state administrative complaint resolution process. *Id.* More recently, the Sixth Circuit Court of Appeals ruled that the parents of a child with autism could not pursue IDEA, Section 504, or ADA claims against the Ohio Department of Health in federal court until they exhausted their administrative remedies. *See W.R. v. State of Ohio Health Dep't*, 67 IDELR 255 (6th Cir. 2016*, unpublished).* In *W.R.*, the Plaintiff's claims all stemmed from IDEA violations and were therefore subject to the exhaustion requirements of the IDEA. *Id.*

The Sixth Circuit Court of Appeals observed that a parent cannot circumvent the exhaustion requirement simply by requesting money damages, a form of relief not available under the IDEA. *Covington v. Knox County Sch. Sys.*, 32 IDELR 29 (6th Cir. 2000), *reh'g en banc denied*, 111 LRP 66768 (6th Cir. 05/02/00). Even in matters involving abuse or neglect, whether the IDEA's exhaustion requirement applies to claims involving purported abuse or neglect depends on the type of harm alleged, but if the IDEA can provide relief for any of the student's claimed injuries, the parents must exhaust their administrative remedies before filing suit. *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 66 IDELR 210 (10th Cir. 2015).

Here, the relief available to the Appellant regarding 504 and ADA claims is also available under the IDEA. Additionally, the facts that give rise to the 504 and ADA claims are the exact same facts that were elicited in the state administrative due process hearing. The Appellant is obligated to follow the law and exhaust all administrative remedies prior to pursuing her claims in federal court. Were Appellant not to exhaust her remedies through the

IDEA's exhaustion requirement, she would surely have a result similar to that of *W.R. (supra).*

**RECORDS AND DISCOVERY**

The U.S. Supreme Court established in *Schaffer v. Weast*, 44 IDELR 150 (2005), that the burden of persuasion in proving the effectiveness of a student's IEP is allocated to the party challenging it. The Supreme Court's ruling requires that, in an administrative hearing challenging the effectiveness of a student's IEP, the party challenging the IEP must provide sufficient information to show it does not address the student's individual needs adequately. While the Court in *Schaffer* addressed the burden of persuasion, the burden of production was not at issue and not addressed.

The IDEA does not contain general discovery rules and, except for the five-day rule governing the admission of evidence, there is nothing in the statute to either prohibit or require the use of discovery proceedings (i.e., compelling the other party to produce documents or be deposed). 34 CFR 300.512 (b). Whether discovery is used in a due process hearing and the nature and extent of the discovery methods used are matters left to the discretion of the hearing officer subject to any relevant state or local rules or procedures. *Letter to Stadler*, 24 IDELR 973 (OSEP 1996). Ohio law is silent regarding state law, local rules, or procedures regarding pre-administrative hearing discovery in these types of proceedings.

The regulations implementing the IDEA provide that: "[e]ach participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part." 34 CFR 300.613(a). "If circumstances ... prevent the parent ... from exercising the right to inspect and review the student's education records, the educational agency ... shall ... [p]rovide the parent ... with a copy of the records requested[.]" 34 CFR 99.10(d)(1).

Throughout the underlying due process hearing and administrative appeal, the Appellant has voiced her concern that she did not receive all of her minor child's educational

records.  To the contrary, Appellee's counsel has indicated that she has provided every single one of the minor child's records.  Yet, to this day, the Appellant does not have ██████ ████████████ a copy of all of the minor child's action plans, detailed disciplinary records, all of the progress reports as required by the minor's IEP, and more. *Exhibit 20.* Additionally, the Appellant seeks access to all emails and other discoverable information that would not be available to her even if the Appellee properly provided access to all of the minor child's records.

As far as the Appellee indicating that the Appellant is seeking the same records that she already has but in a different format.  This is only a half-truth.  The Appellant seeks records that will show all of the information regarding her minor child, and not just the information the Appellee chooses to share.[26]

Since the burden of persuasion is on the Appellant, at least the Appellant deserves a fair opportunity to make her case.  Allowing reasonable discovery in this matter and ordering the Appellee to produce all of the records the Appellant should have received can cure any prejudice she faced during the underlying administrative proceeding and allow the Appellant to receive a fair and just decision on her claims.

**LENGTH OF BRIEFS**

---

[26] For example, undersigned counsel believes the Appellee is referring to the Appellant wanting a copy of report cards and interim reports instead of a copy of academic transcripts.  The academic transcripts only show a course's single semester grade, and not the progress or lack of progress the child was making throughout the year, not the attendance for each grading period, not the teacher's comments for the student for each grading period, and not even a grade for each grading period or semester for a course; it only shows one semester's grade and attendance in the aggregate for the entire year. So the academic transcript only paints a partial picture of the student's performance.

The Decisions from the underlying administrative proceedings were forty-one (41) pages and forty-four (44) pages respectively.  The administrative proceeding lasted multiple days and has a transcript that is 1149 pages long.  There are numerous issues from the underlying administrative proceedings that need addressed so the Appellant can receive a fair and just decision from this Honorable Court.  It is for these reasons that the Appellant seeks to be able to submit a brief up to thirty (30) pages long and to receive an additional thirty (30) days to submit her Brief if this Honorable Court does not allow her to amend her Complaint.

**RELIEF SOUGHT**

The Appellant prays this Honorable Court:

1. Allow the Appellant fourteen (14) days to amend the Complaint to include Americans with Disabilities Act, Section 504 of the Rehabilitation Act and state law claims, or in the alternative, to allow the Appellant to file a new lawsuit regarding those claims;

2. Allow for reasonable discovery to be conducted in this matter or in the alternative, Order the Appellee to respond to the Appellant's request for educational records and emails regarding the Appellant or J.B.

3. Extend the timeline for Briefs to be submitted by both parties by thirty (30) days absent any reconsideration by this Honorable Court;

4. Allow both parties to submit Briefs up to thirty (30) pages long;

5. Order the Appellee to complete the re-evaluation of the minor child.

**WHEREFORE,** the Appellant prays that this Honorable Court reconsider the Order dated July 20, 2016.

Respectfully submitted,

/s/ Jason Wallace
Jason Wallace (0090167)
Daniel Bache (0086045)

270 S Cleveland Massillon Rd
Fairlawn, Ohio 44333
P: 234-466-0829
F: 866-573-8377
Jason@GetHelpOhio.com
Dan@GetHelpOhio.com
Attorneys for Appellant

### **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2016, a copy of this pleading was filed electronically.  Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Jason Wallace
Jason Wallace (0090167)
Attorney for Plaintiff