**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

DELAINA BARNEY           )

     Appellant,                )

-vs-                          )

AKRON BOARD OF EDUCATIONN   )

     Appellee.                 )

CASE NO. 5:16-CV-00112

JUDGE BENITA Y. PEARSON

## BOARD OF EDUCATION'S MEMORANDUM IN OPPOSITION TO APPELLANT'S MOTION FOR RECONSIDERATION

**I.  INTRUDUCTION**

Appellant has moved for reconsideration of this Court's Order, dated July 20, 2016 (ECF No. 21), which denied Appellant's motion to strike and Appellant's motion for leave (ECF No. 19) to join additional parties and new claims.  The reasons for this Court's decision was set forth in its Order (ECF No. 21) and should not be reconsidered.  Appellant's Motion for Reconsideration (ECF No. 24) is unfounded, contains misinformation, and does not meet the legal standard for reconsideration.  Accordingly, it should be denied by this Court.

**II.  LAW AND ARGUMENT**

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. The Sixth Circuit has held, however, that a motion to reconsider may be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e).  *Zino v. Whirlpool Corp.*, No. 5:11CV01676, 2015 WL 9583030, at *1 (N.D. Ohio Dec. 31, 2015) (citing cases); see also *Rodriguez v. City of Cleveland*, No. 1:08-CV-1892, 2009 WL 1565956, at * 1 (N.D. Ohio June 6, 2009) (citing *Smith v. Hudson*,

600 F.2d 60, 62 (6th Cir.1979)). Nonetheless, as this Court observed in *Zino*, such motions are "disfavored and seldom granted" because they contradict notions of finality and repose. *Id.*, 2015 WL 9583030, at *1; see also *Wells Fargo Bank v. Daniels*, No. 1:05-CV-2573, 2007 WL 3104760, at * 1 (N.D. Ohio Oct. 22, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Sigal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).

In order to prevail on a motion for reconsideration, Appellant must show that there is clear error of law, newly discovered evidence, an intervening change in controlling law, or a manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).   In so doing, however, the moving party cannot re-argue the merits or present a new legal theory that should have been presented in the original briefing.  As this Court explained in *Zino*:

> It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.

*Zino*, 2015 WL 9583030, at *1 (citing *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996).

A court may grant a motion to amend or alter judgment if there is a clear error of law, newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

> It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.

*Zino v. Whirlpool Corp.,* No. 5:11CV01676, 2015 WL 9583030, at *1 (N.D. Ohio Dec. 31, 2015) (citing *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996).

Here, Appellant submitted the Motion for Reconsideration in order to "preserve the record" and allegedly to "correct a clear error of law" or "prevent manifest injustice."  In so doing, Appellants did not present any intervening change in controlling law.  Moreover, they did not make any attempt to show any legal error by this Court at all.  Indeed, what is most striking about Appellant's Motion is that it not only fails to show any legal error in the Court's original decision, but wrongfully seeks to "move the target" by lodging yet more new allegations and claims that are immaterial and are without appropriate factual, statutory or case law support.  Accordingly, the Motion should be denied.

## A. Appellant's Motion for Reconsideration is a Bad Faith Litigation Tactic That Unnecessarily Multiplies and Delays the Proceedings.

Given that Appellant's Motion for Reconsideration does not come close to satisfying the applicable legal standard, it appears that the Motion was filed as a bad faith litigation tactic that unnecessarily delays the proceedings and increases the cost of litigation for the Akron Board of Education.

Where, as here, a motion for reconsideration has been filed for no legitimate reason, the federal courts have often imposed sanctions on attorneys for unnecessarily multiplying the proceedings. See, e.g., *Hissong Group*, 2010 U.S. Dist. LEXIS 98709 ("This Court concludes that … counsel should have perceived the risk that their motion for reconsideration would needlessly multiply the proceedings. In their motion for reconsideration, Defendants fail to direct the Court's attention to either an intervening change in controlling law or new evidence."); *American Trim, L.L.C. v. Oracle Corp.*, 230 F. Supp.2d 803, 804 (N.D. Ohio 2002) ("It is time that lawyers who file

3

unfounded motions for reconsideration, which is all this motion really is, and renew objections to rulings that have been preceded by consideration of the arguments they simply repeat in support of motions to reconsider, come to understand that there will be a cost to their doing so. A party that prevails on rulings should not have to invest resources in having those rulings reconfirmed.”); *Miller v. Norfolk Southern Rwy. Co*., 208 F. Supp.2d 851, 854 (N.D. Ohio 2002) (“counsel who in the future file unfounded, unmerited, and unsuccessful motions for reconsideration simply because they disagree with a ruling, decision, or order should expect to be to be sanctioned to the full extent permitted under Rule 11 and 28 U.S.C. § 1927”).

In this regard, the district judge in *Miller v. Norfolk S. Rwy. Co*., 208 F. Supp. 2d 851, 853 (N.D. Ohio 2002), issued a reprimand as a sanction to the lawyer who filed a motion for reconsideration.  The Court described the motion for reconsideration in a manner that applies equally to this case:

> The motion to reconsider filed in this case was not one of those rare or unusual motions that called my attention to an argument or controlling authority that had been overlooked or disregarded in the original ruling on defendant's motion for summary judgment, presented evidence or argument that could not previously have been submitted, or pointed out a manifest error of fact or law. Instead, and at best, the motion simply expressed disagreement with my decision, and treated, in effect, my ruling and order as though they were an opponent's brief, the rationale of which was subject to refutation, rather than, as a judicial order, acknowledgment.
>
> The motion, accordingly, presented no basis on which it could, or should have been granted. It was, from the outset, an exercise in futility. But it still required a response from defendant and review and a ruling by me. As a result, the defendant's money and my time were wasted.

*Id.* at 853. Thus, the district judge in *Miller* concluded with the following warning to lawyers:  “If publication of this order, and other measures I expect to take to inform counsel of this approach to meritless motions to reconsider do not stem the tide, then counsel who in the future file unfounded, unmerited, and unsuccessful motions for reconsideration simply because they disagree with a

4

ruling, decision, or order should expect to be to be sanctioned to the full extent permitted under Rule 11 and 28 U.S.C. § 1927." *Id*. at 854.

Like the *Miller* case and the other cases cited above, Appellant's Motion for Reconsideration in this case is similarly unfounded, unmerited, and filed simply because Appellant's counsel disagrees with the original decision of this Court.   As a result, the Akron Board of Education has been wrongfully placed in a position of preparing an opposition brief in order to correct Appellant's misstatements of fact and law and is compelled to do so in order clarify issues in Appellant's request for reconsideration that wrongfully intended to create the wrong impression about the underlying merits of this case and to mischaracterize actual events.

**B. Appellant's Motion for Reconsideration Presents Arguments That Have No Relevancy to the Issues Before this Court.**

Appellant's Motion for Reconsideration, (ECR 24, Pgs. 3-6) contains argument about non-issues in this case such as child find; residency; initial evaluations; timelines for initial evaluations. (*Id*. at pg. 6 fn. 4). None of these issues were ever raised in the administrative proceedings below are not relevant to the issues presented on appeal.   Indeed, ETR's are valid for three years. Therefore the student's three-year "triennial" re-evaluation is not actually due until May 22, 2017. Appellant's arguments about the re-evaluation therefore are completely irrelevant and should not be considered by this Court.

**C. Appellant's Motion for Reconsideration Presents Factual Allegations That Mischaracterize Actual Events.[1]**

---

[1] In a wrongful attempt to circumvent this Court's July 20, 2016, Order, Appellant's counsel seek to expand the administrative record by filing 25 exhibits that are attached to their Motion for Reconsideration without leave of Court and in contravention of the Court's Order.  To the extent that the Court were to consider any of Appellants' exhibits, then the Board requests leave to file its own set of exhibits, which are attached to this Memorandum in Opposition and have been filed in order to clarify the record and to show how Appellant's counsel have mischaracterized the facts. Appellee's exhibits are limited and are not intended to expand the administrative record.   Rather, they are attached for the sole purpose of responding to misstatements and mischaracterizations made by Appellant's counsel in their Motion for Reconsideration.

###### a. **Appellant's motion misrepresents the actions taken regarding the agreement to conduct an early triennial re-evaluation for the student and the subsequent request for an independent educational evaluation.**

Although the issues presented by Appellant's Motion for Reconsideration are irrelevant and immaterial to this appeal, the Board of Education nevertheless is compelled to respond to the allegations because they mischaracterize the actual facts.  Despite the fact that the student's "triennial" re-evaluation was not due to be completed until May 22, 2017, the student's IEP team, including the parent, agreed for the school to begin the student's "triennial" re-evaluation early.

A Prior Written Notice was provided to the parent on November 4, 2015, based upon the parent's request that the student receive his triennial re-evaluation early. (Board Exhibit 1) The parent signed consent for the school to conduct this early triennial evaluation and the process for the early re-evaluation began.  The parent fully participated in the evaluation planning meeting at the student's November 4, 2015 IEP team meeting. (Board Exhibit 1, pg. 2(6)) The parent signed a consent for the early triennial re-evaluation (Board Exhibit 2) and consented for the evaluators to communicate with the student's school-based mental-health counselor and Children's Hospital.

It was after the IEP team agreed to provide the student with an early triennial re-evaluation, that Appellant's counsel, Jason Wallace, on November 10, 2015, requested an Independent Educational Evaluation (IEE) for the student via email.  (Board Exhibit 3).  In response, on November 16, 2016, Mr. Wallace (and his client) was provided a "Prior Written Notice" ("PWN") explaining why an IEE was not required (Board Exhibit 4).[2]  The PWN was attached to a letter

---

[2] Generally, parents have to first disagree with the school's evaluation (ETR) before they can legally request an independent educational evaluation (IEE).  An IEE request can be denied, if a due process hearing officer rules that the school's ETR is appropriate.  Such was the case here. Because the school's ETR was ruled to be appropriate by the impartial hearing officer and again on appeal by the state level review officer, it was explained to Mr. Wallace that the student's IEP team agreed to conduct the student's triennial re-evaluation early. Once the new ETR was completed, Mr. Wallace could then disagree with it and request an IEE at that point.  This was explained to him *ad nauseum*.  This was also fully explained in writing in the Prior Written Notice provided to Mr. Wallace and his Client. (Board Exhibit 4)

from the Board of Education's General Counsel, which again offered to facilitate Mr. Wallace's access and the parent's access to the student's educational records.  The letter also explained how the parent could obtain 24/7 access to the students' records using the online District Home Access Center.  (Board Exhibit 5).

The statements made by Appellant's counsel in the footnotes on page 7 in Appellant's Motion for Reconsideration first indicate "it is unclear who sought the re-evaluation since there was not a Prior Written Notice…in the educational files that would indicate this information." Fn 6 states "*it appears at no time prior to this date did the Appellee ever seek all of the minor child's medical records…[T]his was observed by undersigned counsel when viewing records at the school, but undersigned counsel was not provided a copy of this record to produce to the Court…*" *Thus, depriving the parents of informed consent*, etc., this is simply not correct. Pg. 7 of Appellant's Motion for Reconsideration further states "*it is unclear what the intended scope of the re-evaluation was to be…*" The scope of the re-evaluation and the results of the discussion of the team's decision as to what assessments would be needed are described on the planning meeting form. (Board Exhibit 2, pg. 2-3)

It is important to note that Mr. Wallace, despite having access to the student's files for over a year, did not actually take it upon himself to access the student's Child Study or any other educational files until April of 2016.   Indeed, as previously indicated, Mr. Wallace personally received the November 16, 2015 Prior Written Notice explaining the IEE situation. (Board Exhibit 4)  The evaluation planning meeting was held with the parent during the November 4, 2015 IEP team meeting in which the scope of the student's evaluation was planned and discussed. (Board Exhibit 2).

Appellant's counsel laments having to have releases signed for medical records throughout their Motion for Reconsideration.  As they state on Pg. 11, "[*t*]*here is no known justification why the Appellee needed another release: especially considering that all of the minor child's doctors are affiliated with Akron Children's Hospital and that is one of the releases it had back in November 2015*."  First, this statement is not true.  All of the student's medical providers are not all affiliated with Akron Children's Hospital.  Further, the Authorizations for Release of Medical Information from Children's Hospital <u>for the school district</u> expire 60 days from the date of signature.  (Board Exhibit 6)  Simply put, the District cannot use expired releases to obtain medical records and to communicate with the student's medical providers.

On April 4, 2016, the Board's General Counsel emailed Jason Wallace with a dozen or so release forms to be signed and returned, per this Court's March 30, 2016 Order.  Dr. Merkle's letter (Board Exhibit 7) also was provided because it explained the importance of having the identities of all of the student's medical providers.  Contrary to Appellant's suggestions, however, there was nothing in Dr. Merkle's instructional letter that indicates "*Appellant could provide them to … Dr. Merkle himself*" as indicated by Appellant's Motion for Reconsideration.  This is yet another misstatement of fact in Appellant's motion.  (See Motion, pp. 9 & 10).

In fact, when the releases were not forthcoming, on April 10, 2016, Board's Counsel sent Mr. Wallace the following correspondence:

> Like we discussed with Judge Pearson, the school psychologist needs [the parent] to sign the releases so he can retrieve the records from the various medical care providers.  The District will need to speak with [the student's] doctor(s).  As Judge Pearson ordered, I provided the release forms directly to you.  Please explain to [the parent] that Judge Pearson directed you to provide these releases forms, signed by the parent, directly to me.  I will certainly provide them ASAP to the psychologist who is completing the ETR for the family.  Thank you.  – Rhonda

(Board Exhibit 8, Pg. 1). Indeed, *prior to the March 30, 2016 10:00am status conference with this Court*, Board's Counsel communicated to Appellant's counsel the following at 8:47am:

> Also, once the evaluation is ready, let me know if you or Daniel plan on attending the ETR meeting.  Our policy is that if a parent brings an attorney to an IEP or ETR meeting, then I also attend.  I would appreciate your professional courtesy in this regard.  Thank you. – Rhonda

(Board Exhibit 8, Pg. 3)

On Pg. 11 fn.17 of the Motion for Reconsideration, Appellant's counsel acknowledges that they did not follow this Court's order of March 30, 2016, and that they failed to provide the Board's General Counsel with the signed releases as this Court ordered them to do.  While Appellant's counsel seek to excuse this failure by stating that, in hindsight, "*the Appellant would certainly adhere to this Court's Order instead of following the instructions of Appellee's counsel and school psychologist…,*" this statement is disingenuous and sets forth yet another misstatement of the facts.[3]

The consequences of Appellant's counsel's non-compliance with this Court's Order resulted in the District being unaware that Appellant was having simultaneous evaluations performed on the student, including a complete neuropsychological evaluation at Akron Children's Hospital that actually occurred on April 27, 2016 - the same day when the parent dropped of the executed medical release forms to the school, when they should have been provided directly to the Board's General Counsel by Appellant's counsel "forthwith."

Bringing this particular situation to the Court's attention was because the parent was not cooperating with the requests of the school psychologist, Dr. Merkle, after being asked for the required release forms back on March 4, 2016.  As described in Dr. Merkle's Affidavit (Board Exhibit 9), he had been attempting to obtain release forms from the parent since March 4, 2016,

---

[3] There is no hindsight necessary regarding a clear Court order.

when he was assigned to complete the early triennial re-evaluation. Dr. Merkle made several attempts to facilitate the required documentation from the parent, including making a home visit. As explained in Dr. Merkle's Affidavit, he temporarily suspended the student's re-evaluation, pursuant to the medical records that he eventually received from Akron Children's Hospital, recommending that the student not be subjected to significant classroom or standardized testing. This was fully explained to the Appellant in a Prior Written Notice. (Board Exhibit 10)

Appellant's counsel has had numerous opportunities to access the student's educational records, not only did Dr. Merkle attempt home visits to the parent's home, but on February 1, 2016 the Board's General Counsel also offered to have someone go to the parent's home to facilitate access to the educational records. (Board Exhibit 11). The letter also invited the parent to obtain 24 hour a day access to the student's records through the Home Access Center.  When Mr. Wallace indicated that a certain date was not convenient for him to have access to the student's records, the District made multiple accommodations.  For example, on April 18, 2016 the District accommodated Mr. Wallace's need to change the day to view the Child Study file. (Board Exhibit 12)  That same correspondence again reiterated the following:

> Also, as I previous indicated to you in writing and again with Judge Pearson, our policy and practice is that I attend IEP team meetings when lawyers attend them.  I asked for your professional courtesy to give me a heads up so I could attend. Recently Daniel showed up at the school IEP team meeting this week with the parent, after the parent clearly indicated that she was not bringing an attorney.  This meeting had to be rescheduled, due to the fact that you and Daniel did not communicate to me that you were attending the student's IEP team meeting, even after you assured me that you would notify me. - Rhonda

(Board Exhibit 12, Pg. 2)

An IEP team meeting was scheduled with the parent for June 1, 2016 (Board Exhibit 13). Again, the parent was asked to notify the school if she was bringing legal counsel. Despite informing the IEP team that her lawyer was not coming, Daniel Bache showed up at the IEP team

10

meeting anyway, without notifying the Board's General Counsel.  As a result the IEP team meeting had to be rescheduled.  According to the school principal, Mr. Bache, refused, however, to leave the school until he had obtained a copy of the sign in sheet for the IEP team meeting. According to the school principal, he eventually left after about ½ hour waiting in the office.  Attached as (Exhibit 14) is the sign in sheet that he was waiting for.

As noted by Appellant's counsel (Board Exhibit 12, Pg. 2), Appellant's counsel have apparently been audio recording IEP team meetings, and offered to provide the Board's General Counsel with a copy of their recordings.

Many of the statements made by Appellant's counsel in their Motion for Reconsideration are deceptive. Appellant's inclusion of a "60 day" timeline for initial evaluations is just plain misleading, implying that the early triennial re-evaluation was somehow inconsistent with a legal timeline that governs only initial evaluations.  Appellant's counsel similarly, throughout their motion, inserts various "canned statements of law" that have no relevance to anything before the Court on the administrative appeal.

On pg. 14 of the Motion for Reconsideration, Appellant's counsel states that it was the District that "*refused to meet numerous times when the parent attempts to attend IEP meetings with people who are familiar with her child … [then they state] on three (3) separate occasions within the past year, the IEP team has simply refused to meet … because the team did not like who the Appellant brought with her.*"   In making this statement, however, they fail to mention that the individuals who Appellant brought were Jason Wallace and Daniel Bache, another deception by the Appellant's counsel.  As previously indicated, Appellant's counsel were previously informed to give the Board's General Counsel the professional courtesy of providing advance notification if they intended to attend an IEP or ETR meeting, so the Board's counsel could also attend. This is

the Board's standard policy and procedure to ensure that the school district administrators and other personnel are adequately represented.  As previously demonstrated, however, the parent often would inform the team that her lawyers were not coming, then the attorneys would show up without notice - armed with a tape-recording device.

Under the circumstances, therefore, it is not unreasonable for the School District's administrators to reschedule the meeting.   Indeed, Attorneys Wallace and Bache fully knew that members of the student's IEP team, including the administrators, were represented by the Board's General Counsel. Yet, in an apparent effort to gain a litigation advantage and to create the misimpression that the District was "refusing" to meet with the Appellant, they wrongfully attended the IEP meetings <u>without</u> notifying the Board's Counsel, as they had previously agreed to do.   Accordingly, the Court should reject all of their arguments because they are irrelevant and immaterial and improperly seek to create the wrong impression about the Akron Board of Education's handling of this special education matter.

## CONCLUSION

The statements made by Appellant's counsel throughout Appellant's Motion for Reconsideration do not relate to any of the claims on appeal before this Court.  To suggest these non-relevant matters somehow serve as a basis for a Fed. R. Civ. P. 59(e) motion lacks credulity. Appellants have failed to satisfy the legal standard for a motion for reconsideration, which should be denied as a matter of law.  In this regard, the Board's Memorandum in Opposition and the attached exhibits are being submitted in order to respond to the inaccurate statements of fact in Appellant's Motion and to provide this Court with the correct understanding of the facts. It is not the intent of the Board to enlarge this administrative appeal with anything outside the scope of the

actual issues pending on appeal before this Court that, as this Court correctly determined in its Order of July 20, 2016, must be decided based upon the certified administrative record.

Respectfully submitted,

s\ *Rhonda Porter*
Rhonda Porter (0076885)
General Counsel
Akron Board of Education
70 North Broadway
Akron, Ohio 44308-1999
Telephone: 330-761-2912
Facsimile: 330-761-3295
Email: rporter@apslearns.org
Counsel for Plaintiff, Akron Board of Education

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016 a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF System:

*/s/ Rhonda Porter*
Rhonda Porter (0076885)