# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DELAINA BARNEY | ) Civil Action No. 5:16-CV-00112 |
| Appellant, | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| AKRON BOARD OF EDUCATION | ) **APPELLANT'S OPPOSITION TO APPELLEE'S MOTION FOR "ATTORNEY FEES" AND COSTS** |
| Appellee. | ) |

Now comes the Appellant, Delaina Barney, by and through undersigned counsel, and who hereby submits this Opposition to Appellee's, Akron Public School's ("APS"), Motion for "Attorney Fees" and Costs.

A Memorandum in Support is attached.

Respectfully submitted,

*/s/ Daniel R. Bache*
Jason Wallace (0090167)
Daniel Bache (0086045)
270 S Cleveland Massillon Rd
Fairlawn, Ohio 44333
P: 234-466-0829
F: 866-573-8377
Jason@GetHelpOhio.com
Dan@GetHelpOhio.com
*Attorneys for Appellant*

1

## MEMORANDUM IN SUPPORT

**I.    FACTS**

Appellant Delaina Barney sought a review of the administrative decisions reached in the IDEA due process hearing regarding her disabled child by appealing the SLRO's decision to state court. On January 19, 2016, APS filed its Notice of Removal to this Honorable Court. Doc #: 1. The administrative appeal was on the Court's administrative track. Doc #:14. The Briefing on the administrative record was completed by all parties on October 11, 2016. Doc #. 33. This Honorable Court issued its thirty (30) page Decision on October 16, 2017. Doc #: 39. Throughout this Appeal and the underlying decisions, not one person challenged the fact that J.B. is disabled, needs a lot of help and assistance from APS, has a life-threatening peanut allergy, or that the Appellant's actions were clearly made with J.B.'s well-being in mind.

**II.    LAW**

**A.    IDEA Fee Shifting.**

It is very difficult for a school to shift fees to a parent or attorney in an IDEA action compared to IDEA's provision that allows a parent to receive attorney's fees simply as a prevailing party, because there is a heightened standard for school districts to meet that aligns with case law holding that fees should not shift to prevailing school districts except in the most egregious cases. *See R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011). The IDEA empowers a court to award attorney's fees "to a **prevailing party** who is an SEA or LEA against the attorney of a parent **who files a complaint or subsequent cause of action** that is **frivolous**, **unreasonable**, or **without foundation**, or against the attorney of a parent who **continued to litigate** after the litigation **clearly became frivolous, unreasonable, or without foundation**." 20 USC 1415 (i)(3)(B); 34 CFR 300.517 (a)(1)(ii) (emphasis added). While APS' Motion for Fees and Costs does not make it clear who it is seeking attorneys' fees from, this provision can only be used against the Appellant's attorneys, not the Appellant-Parent herself.

2

The IDEA also allows an award of attorney's fees "to a prevailing SEA or LEA against the attorney of a parent, or against the parent, **if the parent's request for a due process hearing or subsequent cause of action** was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 34 CFR 300.517(a)(1)(iii) (emphasis added). The Supreme Court has said "[t]his language simply adds reasonable attorney's fees to the list of recoverable costs set out in 28 U.S.C. § 1920, the general statute covering taxation of costs, which is strictly limited by § 1821." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292, 126 S. Ct. 2455, 2456, 165 L. Ed. 2d 526 (2006).

> In an IDEA fees action in the Southern District of Ohio, the Court held:
>
> Clearly, a claim is not rendered frivolous merely because it is unsuccessful. When a parent has "a statutory remedy available that would arguably have provided additional educational benefit" to her child, "the fact that the arguments were not successful doesn't make them frivolous." To determine whether a claim is "frivolous" the Court must take into account the following factors, none of which alone is dispositive: whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the guidelines set forth in *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) and whether the record would support such a finding. When applying the *Christianburg* standard, the Sixth Circuit has found civil rights claims not "without foundation, frivolous, or unreasonable" when they are supported by "some evidence."

*Oakstone Cmty. Sch. v. Williams*, 2012 WL 4051322, at *4 (S.D. Ohio Sept. 13, 2012) (internal citations omitted). As the Ninth Circuit noted, "the IDEA's language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), which is now the standard for awarding fees to prevailing defendants in civil rights cases." *Id.* "[B]ecause '[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction,' it 'must be limited to truly egregious cases of misconduct.'" *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) (citations omitted); *see Serrano v. Cintas Corp.*, 699 F.3d 884, 905 (6th Cir. 2012) (finding that losing numerous motions, failing to respond properly to discovery requests, refusal to produce information, and withdrawal of claims for lack of merit did not constitute egregious and unreasonable conduct); *Tarter v. Raybuck*, 742 F.2d 977, 987–88 (6th Cir.1984) (the fact

3

that a court declined to adopt plaintiff's position is not tantamount to concluding defendants are entitled to an attorneys' fees award under civil rights laws.).

### B. Fed.R.Civ.P. 54 and 28 U.S.C. § 1920 Generally.

In the Sixth Circuit, there is a presumption in favor of awarding costs to a prevailing party, but a court may deny costs at its discretion. *White & White v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). The recoverable costs under Rule 54(d) are defined in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441-42 (1987) (Section 1920 "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)"). The Supreme Court has viewed these costs as narrow in scope and, in sum, a fraction of the full expenses ordinarily incurred in federal litigation. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012); *see also In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007) ("[T]he discretion that Rule 54(d)(1) gives courts ... is discretion to decline requests for costs, not discretion to award costs that § 1920 fails to enumerate.").

### III. ARGUMENT

#### A. APS Failed to Establish it is Entitled to Any Costs Pursuant to Fed.Civ.R.54.

APS' Motion for Fees and Costs with its supplemental materials is extremely vague, incomplete, inaccurate, and does not comport to the stringent standards for this Court to award it fees or costs. For example, to date, APS has failed to submit a bill of costs. *See* Exhibit 1, Sample Bill of Costs. APS did not submit the attorneys' fees or costs it sought within the fourteen (14) days as required by Fed.R.Civ.P.54(d)(2)(B) and instead filed a generic Motion with no specificity whatsoever seeking an unknown amount of "attorney fees and costs." *See* Doc #: 38 PageID #: 1223; *King ex rel. King v. Floyd Cty. Bd. of Educ.*, 228 F.3d 622, 627 (6th Cir. 2000) (A party "would have had only 14 days after the entry of judgment within which to move for attorney fees. *See* Rule 54(d)(2)(B), Fed.R.Civ.P."). When APS did submit a Motion for Fees and Costs, it did not state when, how, or why the cost it is trying to recover was expended or provide any detail. This is simply not sufficient.

4

### i. APS Failed to Allege or Prove it was the Prevailing Party or entitled to costs.

APS must establish its status as a prevailing party in order to recover attorney's fees for frivolous, unreasonable, or baseless litigation. *Oscar v. Alaska Dep't of Educ. and Early Dev.*, 50 IDELR 211 (9th Cir. 2008). "The touchstone of the prevailing party inquiry" is "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Assn.* v. *Garland Independent School Dist.,* 489 U. S. 782, 792-793. Judge Polster was confronted with a strikingly similar situation as the instant matter and indicated the following when denying costs and fees:

> Here, however, insofar as the County Defendants seek costs pursuant to Rule 54(d)(1), it is not entirely clear what the County Defendants are actually asking the Court to rule on at this time. The County Defendants have not requested the Clerk tax costs, have filed no bill of costs, and have not even given the Court an indication of which of § 1920 's six categories of costs might apply, or why. Moreover, the four County Defendants do not discuss at all which of them qualify as "prevailing parties" under Rule 54(d), or why.  In fact, while the County Defendants mention Rule 54(d) on the first page of their Motion for Expenses, Rule 54(d) is discussed nowhere in their Memorandum in Support of the Motion for Expenses.  Thus, as there are no submitted costs to evaluate and no arguments about the law, it would be difficult for North to oppose the motion for costs, just as it is now impossible for the Court to meaningfully evaluate the merits of the County Defendants' request.

*Cameron N. v. Cuyahoga Cty.*, 2017 WL 3883652, at *3 (N.D. Ohio Sept. 6, 2017).

Since APS failed to discuss this critical element and the applicable laws, its request for attorneys' fees should be denied without this Court ever considering frivolousness.

### ii) APS Presented No Evidence the Appeal When Filed Was Frivolous.

In Order to shift Attorneys' fees under the IDEA's frivolous prong at 34 CFR 300.517(a)(1)(ii), it is not enough for APS to indicate that one of the Appellant's Motions or some specific action was frivolous, instead, APS must show the instant Administrative Appeal **when filed** was frivolous.  APS failed to establish this or even discuss it.  It is not the burden of the Appellant to flush out APS' arguments or plead with specificity the requirements for a bill of costs or attorneys' fees.  Since APS failed to indicate how the instant matter was frivolous when **filed**, APS' Motion must fail as a matter of law.

5

### iii) Appellant and her Attorneys Acted Reasonably Under the Circumstances.

"As this Court has recognized on numerous occasions, assessing whether conduct is "reasonable under the circumstances" requires the district court to analyze counsel's conduct as it appeared at the time counsel acted. Although a district court is given wide discretion in deciding whether counsel have acted reasonably under the circumstances, "[t]he court is expected to avoid using the wisdom of hindsight and should test [counsel]'s conduct by inquiring what was reasonable to believe at the time [counsel acted].""" *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir.1987) (quoting Fed.R.Civ.P. 11 advisory committee's note). IDEA administrative due process hearings are meant to be quickly decided and informal in nature. IDEA cases should move from complaint to a hearing and within a total of 75 days. Parties cannot take depositions, issue interrogatories, document requests, or requests for admission, or use other forms of discovery. Relevant factors for determining whether an attorney acted reasonably under Rule 11 include: "'the time available to the signor for investigation; whether the signor had to rely on the client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether the signor depended on forwarding counsel or another member of the bar.'" *Davis v. Crush*, 862 F.2d 84, 88 (6th Cir. 1988) (citation omitted). Rule 11 does not permit sanctions when a case "went poorly after an investigation that was adequate in light of what was known (and how much time was available) before the paper was filed." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (*en banc*).

The same type of rules should apply to fee actions under the IDEA.[1]  IDEA counsel who will have interviewed parents, obtained their documents, and followed up on that evidence, will almost

---

[1] The experience under the 1983 version of Rule 11 may be illustrative. That version of Rule 11 lacked the procedural safeguards added in 1993. As a result, the rule was a large-scale fee shifting device used to pay winners' attorneys' fees, rather than a means to deter abusive behavior with narrowly-tailored sanctions. See Margaret L. Sanner & Carl Tobias, *Rule 11 and Rule Revisions*, 37 Loyola L.A. L. Rev. 573, 577 (2004). Tactically, counsel often waited until winning the case to seek sanctions. This encouraged courts to examine the issues on a post hoc basis to find that the plaintiff's losing claim had

certainly still lack the same quality or amount of information that ordinary civil litigants would have pre-trial and what schools would possess. Moreover, in most IDEA cases, counsel may have very little time to file for due process, compounding the problem. In the instant matter, Appellant and her counsel had very little time to file the due process complaint based upon the perceived threat of the allergic reaction, did not have any discovery available to them, withdrew claims when appropriate, presented a plausible view of the law, and believed they had a meritorious case. Simply put, the Appellant and her attorneys acted reasonably at all times, and APS' Motion should fail.

### iv. There was a Dispute About a Material Fact.

This Court held the Appellant did not prove her child suffered an allergic reaction during the time involved in this action. Doc #: 36 PageID #: 1216. Appellant believes her son suffered an allergic reaction and it appears others throughout the case did as well. The dispute about whether there was an allergic reaction is a dispute about a material fact. As was held in *Lowery, m*aterial fact disputes generally will preclude an award of § 1988 sanctions—at least where the plaintiff has not misrepresented the state of the evidence. *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 437–39 (6th Cir.2009). Here, the Appellants have not misstated the state of the evidence and since there was a material fact in dispute, this action should not be deemed frivolous.

### v. The Controversy is Sufficiently Based Upon a Real Threat of Injury to the Appellant and/or her Son Which was Supported by at Least "Some Evidence."

Ohio courts have found the Court should consider whether the controversy is sufficiently based upon a real threat of injury to the plaintiff when determining frivolousness. *Oakstone Community School v. Williams*, 2012 U.S. Dist. LEXIS 130449, at *11-12 (Sep. 13, 2012). This is akin to the Seventh Circuit's holding "a case is likely not frivolous if the controversy is based on an actual threat to the plaintiff (i.e., if the plaintiff was or would be injured)." *Lebeau v. Libbey-Owens-Ford Co.*, 799 F.2d 1152,

---

been frivolous all along. Charles Yablon, *Hindsight, Regret and Safe Harbors in Rule 11 Litigation*, 37 Loyola L.A. L. Rev. 599, 629-30 (2004). This is exactly what APS is doing in the instant matter.

1156 (7th Cir. 1986). Here, there is no doubt a central issue the parties were litigating had to do with protections for J.B.'s life-threatening peanut allergy and how that applies to the IDEA.

Additionally, the Sixth Circuit held "[w]hen applying the *Christianburg* standard, the Sixth Circuit has found civil rights claims not "without foundation, frivolous, or unreasonable" when they are supported by "some evidence." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 186 (6th Cir. 1985). APS failed to allege or prove that any of the claims were not supported by at least "some evidence." Thus, APS' claims must fail as a matter of law.

### vi. The Appellant was Within her Rights under the IDEA

The Appellant was acting within her rights at all times and should not have to take on the extra burden of fees and costs. This Honorable Court should not require the Appellant, an indigent parent of multiple children, to bear such a high financial burden because she sought a proper adjudication of claims she felt were valid. A federal court held, "[a]lthough the Court ultimately found in favor of the school district, R.H.'s parents here were well within their rights under the IDEA and their obligations as parents to ensure that their son is afforded all the opportunities available to him. R.H.'s parents were only seeking the best for their son. The Court finds that, absent clear authority mandating them to do so, they should not be required to take on additional financial burdens solely because they sought adjudication of this matter." *R.H. v. Plano Indep. Sch. Dist.*, 2008 WL 906289, at *10 (E.D. Tex. Mar. 31, 2008), *aff'd*, 607 F.3d 1003 (5th Cir. 2010). Similarly, another court found as long as a parent can identify some basis for a FAPE complaint, a prevailing district will not be able to recover its legal fees. *J.G. v. Paramus Bd. of Edn.*, D.N.J. Civil Action No. 06-5612 (SDW), 2008 U.S. Dist. LEXIS 30030, at *11-12 (Apr. 11, 2008). Again, APS failed to allege or prove the Appellant was not acting within her rights or did identify some basis for her FAPE complaint.

### vii. The IDEA is Unsettled and Recently Changed Substantially.

The Sixth Circuit moved away from the *Rowley* standard for FAPE in 2004 to the *Deal* standard, stating that the IDEA requires an IEP to confer a "meaningful educational benefit" gauged in relation to

8

the potential of the child at issue. *Deal v. Hamilton Cty. Bd. of Edn.*, 392 F.3d 840, 862 (6th Cir.2004). During the pendency of this Appeal, the Supreme Court announced yet another standard for a FAPE in *Endrew F*. *Endrew F. v. Douglas Cty Sch. Dist. RE-1,* 137 S.Ct. 988, at 999 (2017). Additionally, on February 22, 2017, the United States Supreme Court vacated and remanded the Sixth Circuit's Decision in *Fry*, framing new standards and limits to the "exhaustion doctrine." *Fry v. Napoleon Community Schools*, 137 U.S. 743, 748, 197 L.Ed.2d 46 (2017). The Appellant has maintained she was seeking to exhaust her administrative remedies and the IHO used the wrong standard of law. Both of these issues directly impact the Appellant's case and show this area of law is continually changing and was unsettled prior to the filing of the Appeal, which should prohibit an award of costs or fees against the Appellant.

### viii. This Court's Decision Does Not Indicate this Matter was Frivolous.

One of the factors used to examine frivolousness, is if the court made a finding of frivolousness. Here, this Honorable Court did not make such finding. Additionally, as indicated in the facts supra, this Honorable Court took over a year to complete its Decision in this matter and provided a careful analysis of the claims. If the matter was frivolous, this Honorable Court could have made the determination that the Appeal had no merit in a much shorter period of time. Next, this Court's thirty (30) page Decision (Doc #: 36) shows the time and detail the Court expended on this matter. *Compare to C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) ("the ALJ's careful analysis, findings of fact, and conclusions of law indicate the seriousness of K.S.'s claims.). The analysis this Court employed shows the administrative appeal was not frivolous and APS' Motion for fees as costs must fail because of it.

### ix. Appellant did Not Have the Benefit of Discovery.

As the Supreme Court recognized in Christiansburg, "the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial." *Christiansburg v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978). Other than an ability to *access* educational records prior to the hearing, a party does not get discovery in IDEA administrative hearings. The Appellant reasonably sought discovery in this action because she felt it would benefit her ability to prove her case and the law

9

supported her ability to do so. There can be no malice or improper purpose viewed by this, especially since other courts have allowed discovery to occur in IDEA actions. *See Burton v. Clev-Heights Univ-Heights*, 1:17-cv-00134-PAG Doc #: 19 Filed: 07/07/17. PageID #: 499.

Normally, before a trial in civil court, the parties may seek discovery through depositions, document requests, interrogatories, requests for admission, and other techniques, and benefit from mandatory disclosures of material under Fed.R.Civ.P. 26(a). For purposes of a Christiansburg fee-shifting analysis, an IDEA plaintiff, lacking standard discovery tools, cannot be expected to know in advance of trial that a case is frivolous to the same degree that a typical civil plaintiff would. Rather, significant problems with the case may not be discovered until witnesses testify at the hearing or until the party actually receives educational records or other evidence normally available in discovery. Because the Appellant has never had the benefit of discovery in this matter, she could only go forward on the information she had or was able to receive from people or businesses voluntarily, and the extensive record before this Court should show the Appellant exercised due diligence in her investigation. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg* 34 U.S. at 422, 98 S.Ct. at 700–701. This is especially true when comparing IDEA administrative due process hearings to a regular civil lawsuit filed in federal or state court, because the IDEA hearings are lightning fast, there is no discovery, there are no rules of civil procedure or evidence applied, and because in any action brought under 20 USC 1415(i)(2)(C), the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Accordingly, given the time and material available to the Appellant, it should be near impossible for a court to award fees to a prevailing defendant when the plaintiff has not had the benefit of any discovery, complains of needing records or discovery, and fails to sustain her burden of proof in her IDEA claim, without anything more than frivolousness being alleged against her.

### x. APS Failed to Mitigate its Alleged Damages.

Parties have a duty to mitigate their expenses and not waste their own time. *Danvers v. Danvers*, 959 F.2d 601, 605 (6th Cir. 1992) (per curium) (stating that the party seeking fees as Rule 11 sanction "must mitigate its expenses by not expending useless effort on frivolous actions"). The Seventh Circuit has also held "[a] party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently." *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir. 1988). Such an obligation is implicit in Rule 11, and requires the defending party to "correlat[e] his response, in terms of hours and funds expended, to the merit of the claims." *Dubisky*, 849 F.2d at 1037 (citations omitted). While APS has never indicated that the administrative appeal when **filed** was frivolous or that it was **filed** for an improper purpose, it likewise failed to mitigate its alleged damages by not filing a Fed.R.Civ.P.11 Motion seeking sanctions. Instead, APS waited until the end of the litigation to make the argument that the Motion to Reconsider was frivolous when the proper way to deal with this would have been a Rule 11 Motion. Further, Fed.R.Civ.P. 54(d)(2)(E) states it does apply to claims for fees and expenses as sanctions for violating these rules (the Federal Rules of Civil Procedure). APS alleges violations of the FRCP, however, it never filed a motion for sanctions under Rule 11.[2] As such, the allegations are barred because Rule 54 does not apply for violations of the rules of FRCP.

### xi. APS Makes No Argument Nor did it Presented Any Evidence Appellant Continued to Litigate After the Matter Became Clearly Frivolous.

APS does not allege the Appellant continued to litigate after the claim **clearly** became frivolous, nor does it attempt to show or prove when the claim would have been deemed frivolous, as it would not

---

[2] It would be too late for APS to file a rule 11 motion now because the safe harbor provision in Fed.R.Civ.P.11(c)(2) requires that the non-moving party have an opportunity to review the motion before its filing and withdraw offensive documents, it necessarily precludes a post-judgment Rule 11 motion because the nonmoving party cannot withdraw an offensive document once judgment has been entered. *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997).

11

have been able to satisfy that burden.³ It is important to remember that the legal standard is not merely continuing to litigate after the case became frivolous, but after it "clearly" became frivolous. The Supreme Court has equated the analogous term "clearly baseless" to "fantastic or delusional." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Accordingly, since APS did not mention this or try to prove it, the Court should not award attorneys' fees as costs under this provision.

### xii. APS Presented No Evidence the Complaint was Filed for An Improper Purpose.

Again, the Complaint or subsequent cause of action needs to be frivolous when **filed** for the Court to shift fees, or the Complaint or subsequent cause of action must have been **filed or presented** with an improper purpose. This means any single act in isolation would not be relevant absent some sort of admission, as the acts in isolation do not determine if the action was filed or presented for an improper purpose. The school district's subjective view of the parent's motive is irrelevant. "An opponent in a lawsuit, particularly a defendant, will nearly always subjectively feel that the lawsuit was brought for less than proper purposes…. However, a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose." *In re Kunstler,* 914 F.2d 505, 519 (4th Cir. 1990).⁴ "For a claim to have an "improper purpose" the claim must be both frivolous (without merit) and result from an improper motive. *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501,

---

[3] It has been held that attorneys' fees may be awarded to a school district under the IDEA when the plaintiff asserts both frivolous and non-frivolous claims, in such a situation the court may award only the amount of fees exclusively attributable to the frivolous claims, and the defendant bears the burden of establishing that the fees for which it is asking were in fact incurred solely by virtue of the need to defend against those frivolous claims. *C.W. v. Capistrano Unified School Dist.*, 784 F.3d 1237, 317 Ed. Law Rep. 53 (9th Cir. 2015).

[4] APS' allegations that do not comport with the Court's Order regarding fees briefing, or based upon "facts" not contained in the record will not be addressed nor would they be relevant. *Vollmer v. Selden*, 350 F.3d 656, 662 (7th Cir. 2003) (a finding that parties filed similar actions against defendants in the past "teaches us little about the propriety of their motives" in the present case and absent a specific finding of frivolousness in relation to those cases, they cannot be used to find that a party later filed a case with an improper purpose); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 755 (6th Cir. 2002) ("[a]ttorney's fees cannot be awarded in an effort to teach [a]ppellant a lesson" when the current case "is not one of the instances in which he blatantly abused the judicial system.").

12

524 (6th Cir.2002), *R.P. ex rel. C.P. v. Prescott Unified School Dist.,* 631 F.3d 1117, 1126 (9th Cir.2011). Thus, if a claim is not frivolous, it necessarily does not have an improper purpose, even if resulting from an improper motive." *Oakstone Cmty. Sch. v. Williams*, No. 2:11-CV-1109, 2012 WL 4051322, at *4 (S.D. Ohio Sept. 13, 2012); *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) ("we do not think the plaintiffs' motives in filing the action by themselves could warrant a fee award."). Further, simple inadvertence or negligence that frustrates the trial judge will not support a sanction. *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987). "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). No allegation by APS can meet this exacting standard.

### xiii. Public Policy Prohibits the Award of Attorneys' Fees in this Matter.

As the Supreme Court made clear in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–18 (1978), for policy reasons, a prevailing civil rights plaintiff is presumptively entitled to reasonable attorney's fees unless a showing of "special circumstances" is made. These policy reasons include Congress' concern for the vigorous enforcement of civil rights and the role of plaintiffs in achieving this enforcement. *Id*. "Because policy considerations such as these are absent in the case of a prevailing civil rights defendant, attorney's fees are presumptively unavailable, where such fees are awarded only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation...." *Id.* at 421, 98 S.Ct. 694.  Indeed, "[a]warding attorney's fees to prevailing defendants in civil rights actions in only the most extreme and egregious cases of misconduct, yet awarding attorney['s] fees to prevailing civil rights plaintiffs on a regular basis under § 1988, comports with the purpose of § 1983 as a vehicle for the enforcement of civil rights and prevents defendants—who often times are in a superior position simply by virtue of being able to afford top legal counsel—from using a heavy hand to prevent plaintiffs with potentially meritorious claims from pursuing those claims." *Roane v. City of Mansfield*, No. 98–4560, 2000 WL 1276745, at *1 (6th Cir. Aug.28, 2000) (citations omitted).  The Seventh Circuit has held if

13

"prevailing defendants were routinely awarded attorney's fees under in civil rights cases, civil rights plaintiffs would be extremely reluctant to initiate litigation for fear of being charged with a fee award vastly exceeding the expected recovery, and in some cases their ability to pay, thereby vitiating the underlying purpose of the civil rights laws. . . . The *Hughes* standard [applying *Christiansburg* to § 1988 actions] was designed to strike a careful balance between the desire to encourage private litigants with valid claims to bring suit to vindicate civil rights and the need to deter frivolous actions brought primarily to harass the defendant without hope of success." *Coates v. Bechtel*, 811 F.2d 1045, 1049 (7th Cir. 1987*).*

Shifting fees to defendants in civil rights actions can easily chill protected activities and this is the reason why fees are shifted only in rare cases. Fees are shifted very rarely and only in exceptional cases. *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (explaining that a fee award "is an extreme sanction, and must be limited to truly egregious cases of misconduct.") (citations omitted); *Mitchell v. Moore*, 218 F.3d 1190, 1203 (10th Cir. 2000) (stating 'rarely will a case be sufficiently frivolous that fees will shift); *Saman v. Robbins*, 173 F.3d 1150, 1157 (9th Cir. 1999) (stating fees only awarded to a defendant in exceptional cases). The court may shift fees if the parents' case is frivolous "with no chance of success," but not if it a "weak" case with "little chance of success." *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999); *see also Bonner v. Mobile Energy Serv. Co.*, 246 F.3d 1303, 1305 (11th Cir. 2001) (holding 'markedly weak' case not frivolous).

Other Courts recognize the importance of challenging decisions and initiating actions based on new theories or arguments that the existing law is wrong or for a modification of the existing law. This principle is so the law can grow and change over time.  As the Second Circuit has concluded, "[v]ital changes have been wrought by these members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself." *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (recognizing need to avoid imposing sanctions that 'chill an attorney's enthusiasm or creativity in pursuing factual or legal theories ') (quoting Fed.R.Civ.P.11, Advisory Committee's Note, 1983 Amendments).

Last, affidavits have been filed in court in Ohio indicating there are not many special education attorneys willing to assist families, and if this Honorable Court shifts fees to Appellant's Counsel, it will have the chilling effect legislators and courts have been concerned with all along. *See Burton v. Clev.-Heights Univ.-Heights*, 5:17-cv-00553, Doc #: 25-1 PageID ##: 338-343, attached as Exhibit 2. As such, APS claims for fees and costs should fail as a matter of public policy.

### xiv. APS Failed to Include Critical Information in its Motion for Fees and Costs.

An attorney's documentation should identify the specific task performed during any given block of time. A court will not hesitate to impose an across-the-board fee reduction based on the improper grouping of tasks (a practice known as "block billing") or vague entries that prevent it from determining the tasks for which the attorney seeks reimbursement. *See, e.g., D.B. and L.B. v. Gloucester Twp. Sch. Dist.*, 61 IDELR 23 (D.N.J. 2013) (reducing a fee award by $132,215 to account for vague entries such as "review of documents" and "various follow-ups"); *Ryan P. v. School Dist. of Philadelphia*, 49 IDELR 280 (E.D. Pa. 2008) (vague and incomplete records justified a reduction in the amount of attorney's fees awarded). On its spreadsheet attached as Doc #: 40-2 PageID #: 1239-1245, APS fails to use any specificity, double bills for tasks, uses block billing, does not list the attorney or person handling the action, sometimes lists times the activity was done, never indicated if the actions were necessarily rendered, has some clearly excessive or unneeded hours for some tasks (i.e. entries on 12/24/2015, 1/19/16, 1/20/16, 1/28/17, 2/18/16, 3/11/176 3/29/16, 5/5/16, 5/9/16, 5/19/16, 5/20/16, 7/20/16, 7/20/16, 7/21/16, 7/9/16-7/10/16, 7/20/16, 8/5/16, 8/6/10-8/10/16, 8/10/16, 8/11/16, 8/12/16 (there are 2 entries for this date and activities with different times), 8/19/16-8/20/16, 8/26/16, 8/31/16), sporadically has single block entries that span multiple days, one entry is incorrect as it reads it was entered "9/21/2017-9/26/2016", one entry says 8/19/16-8/20/16 but the times say 3am-6am on the same day, there is no affidavit from any attorneys in the area attesting the work was necessarily performed or establishing APS' attorney's hourly rate was reasonable. Accordingly, since APS failed to seek fees as costs with the appropriate specificity, it should be denied altogether.

15

### xv. Granting APS' Motion for Fees and Costs Would Provide it a Windfall.

Courts must base all fee awards on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 34 CFR 300.517 (c)(1). A party seeking attorney's fees under the IDEA generally must submit documentation of the rates actually charged by special education practitioners with comparable experience. *Doe v. State of Ohio*, 111 LRP 8283 (S.D. Ohio 07/19/10); *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("[a] reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community."). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence-**in addition to the attorney's own affidavits**-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Meier v. Green*, No. 07-CV-11410, 2007 WL 2909418, at *2 (E.D. Mich. Oct. 5, 2007) (emphasis added). An attorneys' fee must be "adequate to attract competent counsel, but ... not produce windfalls to attorneys." *Meier v. Green*, No. 07-CV-11410, 2007 WL 2909418, at *2 (E.D. Mich. Oct. 5, 2007). Last, in determining an attorney's reasonable hourly rate, a court may consider factors such as: (1) the novelty and difficulty of the questions involved; (2) the skill required; (3) the preclusion of other employment; (4) the customary fee; and (5) the attorney's experience, reputation, and ability. *Gaines v. Douglas County Sch. Dist.*, 53 IDELR 88 (D. Nev. 2009).

APS' Counsel, Rhonda Porter, earned $133,201 working for APS in 2015 as her salary.[5] See Exhibit 3, Salary information of Rhonda Porter from the Buckeye Institute. Thus, Ms. Porter earns approximately $2561.55 per week ($133,201 divided by 52 weeks in a year, equals $2561.55 per week), and approximately $64.03 an hour ($2561.55 divided by 40 hours per week, equals $64.03 an hour).[6] However, APS is attempting to receive $290 per hour for Ms. Porter's time instead of the amount it

---

[5] Appellant could not locate this information for 2016 or 2017.
[6] APS did not include these important details in its Motion for Fees and Cost.

16

actually pays her and completely failed to show why either amount would be reasonable, thus resulting in a likely improper windfall to APS or its counsel. This is yet another reason APS' Motion must fail.

### xvi. Appellant and her Counsel are Unable to Pay Any Award.

While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of civil rights laws, "the award should not subject the plaintiff to financial ruin**."** *Wolfe v. Perry*, 412 F.3d 707, 724 (6th Cir. 2005) (citations omitted). If this Court shifts attorneys' fees and costs to the Appellant and her Counsel in this matter it will subject them to financial ruin. See Exhibit 4, Affidavit of Daniel Bache; Exhibit 5, Affidavit of Jason D. Wallace. When fees are shifted to a prevailing defendant, fees are often reduced substantially based on the plaintiff's financial condition. *See Gibbs v. Clements Food Co.*, 949 F.2d 344, 345 (10th Cir. 1991) (on need to reduce fees based on financial condition); *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987) (holding that financial conditions merit fee reduction). *See also* 150 Cong. Rec. S11, 547 (daily ed. Nov. 19 2004) (statement of Sen. Harkin) (**under IDEA, courts must consider ability of parent or counsel to pay**) (emphasis added). The indigency of the losing party may be considered in taxing costs. *Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir. 1986) ("Although the ability of the winning party to pay his own costs is irrelevant, another factor in favor of denying costs is the indigency of the losing party.") In *Singleton*, it was undisputed that plaintiff was indigent in that he had been granted *in forma pauperis* status to file his lawsuit. "Ability to pay is a relevant factor and it constitutes an abuse of discretion for the trial court to ignore this factor." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989). One court relied on a sworn affidavit about plaintiff's financial condition. *Kee v. NEC Techs., Inc.*, 949 F.Supp. 662, 664-65 (N.D. Ill. 1997). Appellant urges this Court to consider her and her attorneys' indigency when deciding this issue.

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2017, a copy of this pleading was filed electronically.  Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Daniel R. Bache*
Daniel Bache (0086045)
